## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SHERRY GRAHAM-ADAMS, | ) | CASE NO. 8:05CV261 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM** |
| **vs.** | ) | **AND ORDER** |
| | ) | |
| OMAHA HOUSING AUTHORITY, | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on Defendant's Motion for Summary Judgment (Filing No. 35); Defendant's Motion to Strike (Filing No. 55); and Plaintiff's Motion for Leave to File Instanter Amended Index and Exhibits (Filing No. 63).

### FACTS

The following facts are undisputed.[1]  Plaintiff Sherry Graham-Adams is an African American female (Filing No. 1 ("Complaint") ¶ 6).  Graham-Adams has been employed as an administrative clerk for the Omaha Housing Authority ("OHA") since August 2001. (Complaint ¶ 7).  She currently works at Underwood Towers, and she was assigned there because she experienced difficulties with her manager, Sylvia Johnson.  (Filing No. 37 ("Deposition") 13:17-19; 15:2-7).  Plaintiff did not oppose being moved to Underwood Towers.  (*Id.* 19:22-25).

In June 2003, Graham-Adams was working at the Pleasant View housing project office.  (*Id.* 12:24-13:2).  Tiwuana Brown was the site manager and Graham-Adams's supervisor at that time.  (*Id.* 13:9-16).  Graham-Adams alleges that on June 13, 2003, OHA

---

[1]Defendant's Brief in Support of Motion for Summary Judgment (Filing No. 36) does not comply with NECivR 56.1(a). The brief contains a factual background with citations to the record; however, the paragraphs are not numbered as required by NECivR 56.1(a)(2).  In order to respond to Defendant's brief, Plaintiff assigned a number to each fact in Defendant's statement of facts and responded to each fact separately.  The Court appreciates Plaintiff's extra effort to comply with the local rules.  Defendant's failure to comply with NECivR 56.1(a) constitutes grounds for denial of the motion.  Regardless, the Court has considered the statement of facts in Defendant's brief.  Counsel is advised to review the local rules.

employee, Keith Russ, came to the office.  (*Id.* 22:3-6).  Russ was not working that day.  (*Id.*).  Graham-Adams alleges that Russ made sexual advances toward her by grabbing her, shoving her against the wall, kissing her neck and rubbing her thigh.  (Complaint ¶¶ 9,10).  Graham-Adams told Russ she was not interested in his advances.  (*Id.* ¶ 10).  Graham-Adams alleges that Russ received a phone call, and she tried to call Earl Sampson while Russ was on the phone.  (Filing No. 54 at 9).  After the phone call, Graham-Adams asked Russ to leave, and he did.  (Complaint ¶ 10).

Graham-Adams told co-workers, Earl Sampson, Kamala Fuller and Able Lytle, about the alleged sexual harassment.  (Deposition 29:25-30:4; 30:21-31:16).  Graham-Adams did not report the incident to her supervisor, Brown, until June 20, 2003.  (*Id.* 34:14-19).  Brown then reported the incident to the human resources director.  (*Id.* 33:14-18).  OHA conducted an investigation, which included interviews with Graham-Adams, Russ, and others.  (*Id.* 33:25-34:4; 34:13-25; 51:8-13).  OHA provided Graham-Adams with a written document, which indicated the investigation was completed but the evidence was inconclusive.  (*Id.* 51:16-24).  Graham-Adams was offered the opportunity to move to a new location, but she declined the offer.  (*Id.* 35:11-16).

Graham-Adams filed a Charge of Discrimination with the Nebraska Equal Opportunity Commission ("NEOC") on September 2, 2003, alleging sexual harassment and retaliation.  (Complaint ¶¶ 18, 23-30).  Graham-Adams alleges her supervisor, Brown, rarely speaks to her and does not keep her informed of work-related information.  (*Id.* ¶ 19).  Graham-Adams alleges she was retaliated against when OHA refused to allow her to modify her work hours to decrease her contact with her current supervisor, Sylvia Johnson.  (*Id.* ¶ 21).  Johnson became her supervisor in November 2004.  (Deposition 15:12-20).  Graham-Adams was "written up" for missing work.  (*Id.* 41:21-24).  She admits she has taken a significant amount of time off for medical reasons.  (*Id.* 42:20-22).  She has never

been denied the opportunity to take medical leave, including time off without pay. (*Id.* 50:12-20). She has not been written up for any other reason than missing work. (*Id.* 58:5-7).

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (citations omitted).

3

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

Before discussing the merits of OHA's summary judgment motion, the Court must address a few preliminary matters. First, with regard to OHA's summary judgment motion, the Court will not consider OHA's Reply Brief (Filing No. 57) because the Court specifically stated that OHA was not granted leave to file a Reply Brief in the Court's Order, dated May 12, 2006, which granted OHA leave to file a Motion for Summary Judgment out of time. (Filing No. 30 at 1, ¶ 3).

Next, the Court must address OHA's Motion to Strike (Filing No. 55) and Graham-Adams's Motion for Leave to File Instanter Amended Index and Evidence (Filing No. 63). Graham-Adams offered approximately 30 documents in conjunction with her brief in opposition to summary judgment. (Filing Nos. 45-53). OHA moves the Court to strike Exhibits B, C, E, F, G, H, I, K, L, M, N, O, P, Q and R, which are personnel records Graham-Adams's counsel obtained during discovery. OHA argues these exhibits are not properly authenticated. (Filing No. 56 at 3). OHA also objects to Exhibit D, which is a certified copy of a police report of Russ's alleged assault of Graham-Adams, on relevancy grounds. (*Id.*). Next, OHA objects to the affidavit of Graham-Adams, arguing that it contains conclusory statements of fact and law, contains statements inconsistent with Graham-Adams's deposition, and contains no statements regarding personal knowledge. (*Id.* at 3-4). Finally, OHA objects to the affidavit of Jeri Thomas, arguing it contains conclusory statements and no statement of personal knowledge as required by Fed. R. Civ. P. 56(e).

4

Following OHA's Motion to Strike, Graham-Adams filed a Motion for Leave to File Instanter Amended Index and Exhibits.  (Filing No. 63).  In conjunction with this motion, Graham-Adams submitted an amended declaration and index of evidentiary materials.  (Filing No. 62-2).  Graham-Adams also amended her own affidavit and submitted the declaration of Gail Kinsey-Thompson, who was employed as a unit director for the Nebraska Equal Opportunity Commission in 2003.  (Filing Nos. 62-3, 62-4).  Graham-Adams asserts that only Exhibits C, F, K, L, N, O, P and Q remain disputed following her amended declaration and evidence of index. (Filing No. 61 at 2).  OHA opposes Graham-Adams's motion, arguing: 1) Graham-Adams failed to show good cause; 2) OHA will be prejudiced if Graham-Adams is allowed to amend the index and exhibits; and 3) the exhibits remain objectionable.  (Filing No. 65).

Although Graham-Adams should have better organized her index of evidence and identified and authenticated the documents properly when she initially filed her index, the Court finds OHA would not be prejudiced if Graham-Adams is granted leave to file an amended index and exhibits.  As the Court stated above, OHA was not granted leave to file a reply brief in support of its summary judgment motion.  (Filing No. 30).  Therefore, OHA cannot argue that it will be prejudiced because it cannot file a reply brief to respond to the new evidence.  In the interest of efficiency and expediency, Graham-Adams's Motion for Leave to File Instanter Amended Index and Exhibit (Filing No. 63) is granted.

Next, the Court must consider OHA's Motion to Strike (Filing No. 55).  Federal Rule of Civil Procedure 56(e) states that a party responding to a summary judgment motion must controvert the opposing party's submissions by setting forth "such facts as would be admissible in evidence."  Furthermore, NECivR 7.1(b)(2)(C) provides that any documents filed with the index by the party opposing the summary judgment motion "must be identified

and authenticated by affidavit" and the "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

The Court finds the declaration of Graham-Adams's counsel, Jill Harker, (Filing No. 62-2) authenticates Graham-Adams's affidavit (Filing No. 62-5 ("Exhibit Y") at 2). Graham-Adams's affidavit sufficiently authenticates Exhibits B, E, G, H, M, R, 1, 2, 3, 4, 5, 6, 7, 8, and 9. (Ex. Y). The Court denies OHA's motion to strike Graham-Adams's affidavit and Exhibits B, E, G, H, M, R, 1, 2, 3, 4, 5, 6, 7, 8, and 9. Similarly, the Court denies OHA's motion to strike the affidavit of Jeri Thomas, which is an account of Russ's alleged sexual harassment of Thomas. (Filing No. 49-3).

The Court also denies OHA's motion to strike Exhibits F, K, N, O, P, and Q. As demonstrated in Harker's declaration, OHA sent Exhibits N, O, P, and Q to Harker in response to Graham-Adams's discovery requests, and these documents are part of Graham-Adams's OHA personnel file. (Filing No. 62-2; 62-3 ("Exhibit Z")). OHA's Answer to Interrogatory No. 13 references Graham-Adams's ongoing use of leave time and FMLA issues and refers Graham-Adams to her personnel file. (Exhibit Z). The Court finds Exhibits N, O, P, and Q have been sufficiently authenticated. Exhibits F and K are part of Russ's OHA personnel file and are sufficiently authenticated by way of Harker's declaration and OHA's answers to interrogatories. (Filing No. 62-2; Exhibit Z).

The Court finds the declaration of Gail Kinsey-Thompson properly authenticates Exhibit I. (Filing No. 63-5, Ex. X). However, the Court agrees with OHA that Exhibit I, which is a letter from OHA's former counsel to the NEOC responding to Graham-Adams's charge of discrimination, is irrelevant to the current motion and proceedings against OHA. OHA does not dispute Graham-Adams met the administrative requirements of the NEOC

6

process in order to maintain this lawsuit.  (Filing No. 65 at 3-4).  The Court grants OHA's motion to strike Exhibit I.  Similarly, the Court grants OHA's motion to strike Exhibit D, which is the police report that Graham-Adams filed against Russ. (Filing No. 53-1).  OHA does not dispute that Graham-Adams filed a police report, and for purposes of this motion, the Court accepts Graham-Adams's account of her encounter with Russ.  However, the information contained in the report and any investigative work completed by the Omaha Police Department does not affect Graham-Adams's claims against OHA.  Finally, Graham-Adams's has failed to authenticate Exhibits C and L; therefore, the Court will grant OHA's motion to strike Exhibits C and L.

**Sexual Harassment**

The Court will now address the merits of OHA's Motion for Summary Judgment (Filing No. 35).  OHA moves for summary judgment on Graham-Adams's claims of sexual harassment and retaliation.  (Filing No. 36 at 2).  "Employers violate Title VII of the Civil Rights Act of 1964 if they commit, abet, or condone discrimination based on sex or religion that results in a hostile work environment." *Powell v. Yellow Books USA, Inc.*, 445 F.3d 1074, 1076-77 (8th Cir. 2006).  To make out a prima facie case of sexual harassment against OHA based on the conduct of OHA employee Russ, Graham-Adams must prove the following elements: 1) Graham-Adams belongs to a protected group; 2) Graham-Adams was subjected to unwelcome harassment; 3) the harassment occurred due to her protected group status; 4) the harassment affected a term, condition, or privilege of her employment; and 5) OHA either knew or should have known of the harassment but failed to take proper action. *Powell,* 445 F.3d at 1077 (citing *Reedy v. Quebecor Printing Eagle, Inc.*, 333 F.3d 906, 907-08 (8th Cir.2003)).

7

"Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). "A single offensive utterance or exposure to distasteful conduct does not rise to the level of a Title VII violation." *Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir. 1997). The Eighth Circuit Court of Appeals recently stated: "Title VII's purpose is not to smooth the rough edges of our daily discourse, nor to provide a federal cause of action for every slight." *Powell*, 445 F.3d at 1077.

For purposes of this summary judgment motion, the Court must accept all Graham-Adams's allegations as true. OHA does not dispute that Graham-Adams is a female who was subjected to unwelcome harassment based on her gender. (Filing No. 36 at 6). However, OHA argues that Graham-Adams cannot prove the fourth and fifth elements of her prima facie case. (*Id.*). To determine whether a reasonable jury could find that the harassment affected a term, condition, or privilege of her employment, the Eighth Circuit looks at: 1) the frequency with which the purported harassment occurred; 2) the severity of the harassment; 3) whether the harassment was physically threatening or humiliating; and 4) the extent to which the harassment interfered with the plaintiff's job performance. *Powell,* 445 F.3d at 1077 (citing *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 792 (8th Cir.2004)).

Graham-Adams testified that she has not had any encounters of a sexual nature or otherwise with Russ since the alleged incident in June 2003, other than occasional meetings with other employees. (Deposition 31:25-32:13). This indicates that the encounter with Russ was an isolated incident. Although she testified that Russ physically grabbed her and touched her, Graham-Adams testified that Russ did not say anything

8

threatening to her. (*Id.* 30:13-20). Graham-Adams testified that Russ stopped after she told him that she "wasn't that type of girl and that he had a girlfriend." (*Id.* 27:17-23). Furthermore, Graham-Adams testified that Russ left the office when she told him to leave. (*Id.* 29:16-19).

Graham-Adams contends that the alleged assault by Russ has interfered with her job performance and her ability to work well. In support of this argument, Graham-Adams alleges she had to take FMLA leave in order to obtain treatment for depression and panic attacks, which she alleges are a result of the assault and the way OHA treats her. (Filing No. 54 at 16). Graham-Adams argues that OHA has counseled Graham-Adams about her excessive absenteeism. (*Id.*). As Graham-Adams concedes, she has taken a lot of time off for medical reasons. (Deposition 42:11-22). Graham-Adams also conceded that she has not been written up for anything other than missing time at work and she has never been denied the opportunity to take medical leave. (Deposition 50:12-20; 58:5-7).

Graham-Adams also alleges that Russ has a pattern of inappropriate behavior with coworkers; however, Graham-Adams testified that the June 2003 incident was the only encounter of a sexual nature she experienced while working for OHA. (Deposition 31:25-32:13). Furthermore, the affidavit of Jeri Thomas, another OHA employee, which alleges that Russ communicated with Thomas in "an extremely inappropriate and unprofessional manner," fails to demonstrate that Russ's alleged incident with Thomas was of a sexual nature. (Filing No. 49-3). Graham-Adams submitted Exhibit K, which is a written warning to Russ from OHA, relating to the encounter with Thomas; however, the warning makes no mention that the encounter with Thomas was harassment or of a sexual nature. (Filing No. 47-5). In fact, Graham-Adams points to no evidence demonstrating that Russ had any encounters of a sexual or harassing nature with other employees, or, if he did, that OHA

was aware of this alleged pattern of behavior.  On the other hand, OHA submitted the affidavits of Joan Anderson, who has been Russ's supervisor for six years, and Vivyonne Ewing, who is the senior director for human resources at OHA, and both Anderson and Ewing state that there have not been any complaints of sexual harassment against Russ other than Graham-Adams's complaint.  (Filing No. 37, Exs. 2, 3).

Graham-Adams reported the alleged June 13, 2003, assault to her supervisor, Tiwuana Brown, on June 20, 2003.  (Deposition 34:14-19).  Brown then reported the incident to the human resources director, and OHA conducted an investigation into the allegations.  (*Id.* 33:14-34:2; 51:8-13).  OHA interviewed both Graham-Adams and Russ as well as others.  (*Id.* 34:3-4; 34:13-25).  Following the investigation, OHA provided Graham-Adams with documentation that the investigation had been completed and OHA had found the evidence inconclusive either to support or refute Graham-Adams's allegation of sexual harassment.  (*Id.* 51:16-24).  Graham-Adams does not dispute that OHA investigated the incident; however, she contends that OHA failed to take corrective action to stop Russ's behavior.  (Filing No. 54 at 17).  After the incident with Russ at Pleasant View, OHA offered Graham-Adams the opportunity to move to a different location if she would be uncomfortable at Pleasant View; however, Graham-Adams declined the offer. (Deposition 35:11-16).  OHA wrote a memorandum to Russ following Graham-Adams's report of harassment, instructing Russ to avoid any further physical contact with Graham-Adams, reminding Russ that his relationship with Graham-Adams must remain professional, and directing Russ not to visit any OHA location where Graham-Adams worked unless he had a legitimate, work-related reason for being there.  (Filing No. 46-6). Russ was also directed to review OHA's policy against sexual harassment and warned not to retaliate against Graham-Adams.  (*Id.*).

Accepting Graham-Adams's allegations as true, the Court finds that Graham-Adams has failed to satisfy her prima facie showing of sexual harassment.  Specifically, the Court finds that Graham-Adams failed to demonstrate: 1) the harassment affected a term, condition, or privilege of her employment; and 2) OHA either knew or should have known of the harassment but failed to take proper action.  *See Powell,* 445 F.3d at 1077. On the contrary, the evidence indicates that the alleged encounter with Russ was an isolated incident and OHA took the proper steps to investigate the incident and took measures to prevent it from happening again.  While the alleged encounter between Russ and Graham-Adams was inappropriate and offensive, it does not rise to the level of a Title VII violation. *See Hathaway*, 132 F.3d at 1221.

**Retaliation**

"Title VII makes it unlawful for an employer to discriminate against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Bassett v. City of Minneapolis,* 211 F.3d 1097, 1104 (8th Cir. 2000) (citing 42 U.S.C. § 2000e-3(a)). To establish a prima facie case of retaliation, Graham-Adams must show: 1) she engaged in a statutorily protected activity; 2) OHA took an adverse employment action against her; and 3) a causal connection existed between the protected activity and adverse employment action.  *Bassett,* 211 F.3d at 1104-05.  OHA does not dispute that Graham-Adams's filing of her NEOC complaint was a protected activity  (Filing No. 36 at 8); however, OHA argues that Graham-Adams cannot satisfy the remaining two elements.

An adverse employment action is demonstrated by a "material employment disadvantage, such as a change in salary, benefits, or responsibilities." *LaCroix v. Sears,*

11

*Roebuck, and Co.*, 240 F.3d 688, 691 (8th Cir. 2001). "Not every setback amounts to an adverse employment action: instead, an action must give rise to 'a material employment disadvantage' 'that reflects a "tangible change in duties or working conditions."'" *Powell v. Yellow Books USA, Inc.*, 445 F.3d at 1079 (quoting *Baucom v. Holiday Cos.*, 428 F.3d 764, 767 (8th Cir. 2005)). Graham-Adams alleges that she has been retaliated against in various ways. First, Graham-Adams alleges she has been written up for taking excessive leave; however, Graham-Adams concedes that she has taken a lot of time off for medical reasons. (Deposition 42:11-22). She also testified that she has never been denied leave, her salary has not been reduced, and she has never been suspended or demoted. (*Id.*). Next, Graham-Adams claims that her former supervisor, Tiwuana Brown, only communicated with her via email after Graham-Adams filed her complaint. (*Id.* 41:18-24). She also claims that after taking medical leave, she was given a key that did not open all of the doors that she had access to before taking medical leave. However, she concedes that she never complained about the key and she eventually was given a key that could access all of the offices again. (*Id.* 39:20-41:17). Accepting Graham-Adams's allegations as true, the Court finds that none of these allegations constitutes a material employment disadvantage for purposes of Title VII retaliation.

Graham-Adams also makes allegations of retaliation involving her supervisor, Sylvia Johnson. (Filing No. 54 at 19). For instance, Graham-Adams claims that Johnson wrongfully reported Graham-Adams to OHA for fraud. (Filing 54 at 20). Accepting Graham-Adams's accusations as true, the Court finds the accusations regarding Johnson do not have the requisite causal connection to the protected activity. Graham-Adams testified that Johnson became site manager at Pleasant View in November 2004. (Deposition 15:12-14; Filing No. 54 at 13). Graham-Adams's protected activity of filing a

charge with the NEOC occurred in September 2003, more than a year before Johnson became Graham-Adams's supervisor.  "Standing alone, a longer time gap between the protected activity and the adverse employment action 'weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint.'"  *Shanklin v. Fitzgerald*, 397 F.3d 596, 604 (8th Cir. 2005) (citing *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir.1999).  In *Shanklin,* the Eighth Circuit Court of Appeals determined that a ten month gap between the plaintiff filing an EEOC charge and the defendant's decision to terminate the plaintiff was a lengthy delay and evaporated the inference of a causal nexus between the protected activity and the adverse employment action.  *Id.*  Likewise, Graham-Adams's claim that OHA has delayed her annual performance review for 2004-05, even if this qualified as an adverse employment action, is not causally connected to Graham-Adams's protected activity because more than a year passed between the protected activity and the alleged adverse employment action.  Graham-Adams has failed to satisfy her prima facie showing of retaliation because she failed to demonstrate: 1) OHA took an adverse employment action against her; and 2) there was a causal connection between the protected activity and the alleged adverse employment action.

For the reasons stated in this Memorandum,

IT IS ORDERED:

1)      Plaintiff's Motion for Leave to File Instanter Amended Index and Exhibits (Filing No. 63) is granted;

2)      Defendant's Motion to Strike (Filing No. 55) is granted in part and denied in part as follows:

        a)      The motion to strike Exhibits C, D, I, and L is granted; and

        b)      The motion is denied in all other respects;

13

3)    Defendant's Motion for Summary Judgment (Filing No. 35) is granted; and

4)    A separate Judgment will be entered.


 DATED this 26th day of June, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge